IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 17, 2003 Session

## LOUIS ERNEST CUNNINGHAM v. CHERYL LYNNE CHEATHAM CUNNINGHAM

**Direct Appeal from the Chancery Court for Madison County**
**No. 53334    Joe C. Morris, Chancellor**

---

**No. W2002-02296-COA-R3-CV - Filed January 9, 2004**

---

This is the second appeal of this divorce case.  On the first appeal, we remanded the case for a revaluation of Husband's medical practice and reconsideration of the division of marital property and alimony awards.  On remand, the trial court reduced the valuation of Husband's medical practice and recalculated the alimony awards, but made no change to the division of marital property and refused Husband's request for a downward deviation from the child support guidelines.  The court further ordered Husband to refinance the marital home.  Husband appeals.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Kay Farese Turner and Rachael Emily Putnam, Memphis, Tennessee, and Jerry Charles Cox, Jackson, Tennessee, for the appellant, Louis Ernest Cunningham.

Mary Jo Middlebrooks, Jackson, Tennessee, for the appellee, Cheryl Lynne Cheatham Cunningham.

## OPINION

Cheryl Lynne Cheatham Cunningham (Ms. Cunningham) and Louis Ernest Cunningham (Dr. Cunningham) were married in October 1990 and separated in July 1995.  In 1999, the trial court awarded Ms. Cunningham a divorce on the grounds of inappropriate marital conduct.  *Cunningham v. Cunningham*, No. 1999-02054-COA-R3-CV, 2000 WL 33191364, at *1 (Tenn. Ct. App. Oct. 20, 2000) (*no perm. app. filed*) (hereinafter, "Cunningham One").  The court valued Dr. Cunningham's medical practice, the Mid-South Heart Center, at $1,300,000; divided the marital property, with the marital residence awarded to Ms. Cunningham; and awarded Ms. Cunningham alimony *in solido* of $450,000 and rehabilitative alimony of $6,000 per month for seven years.  *Cunningham One*, 2000 WL 33191364, at *1-2.  The trial court awarded the parties joint custody of their minor child, with

the primary residence being with Ms. Cunningham. *Id.* at *1. The court ordered Dr. Cunningham to pay child support of $6,200 per month based upon a net income of $52,000 per month, and to pay $4,486 per month into a college educational trust. *Id.* at *2. The trial court refused to grant a downward deviation from the child support guidelines. *Id.* The court further ordered Dr. Cunningham to maintain a life insurance policy of $900,000 for as long as he has any child support obligation. *Id.* Dr. Cunningham appealed the entire judgment to this Court. *Id.*

On appeal, we determined in Cunningham One that the preponderance of the evidence did not support the trial court's finding that the value of the Mid-South Heart Center was $1,300,000. In so holding, we held that the professional goodwill of Dr. Cunningham's practice is not a marital asset to be considered in making an equitable distribution of the marital estate. *Cunningham One*, 2000 WL 33191364, at *3. We therefore reversed this valuation, and remanded the issue to the trial court for an assignment of value between $546,710 and $624,864, the range supported by the evidence. *Id.* Because the court must consider the value of Dr. Cunningham's medical practice in determining an equitable division of property and award of alimony, we accordingly also remanded these issues to the trial court for reconsideration in light of the revaluation of the Mid-South Heart Center. *Id.* at *3-5.

In Cunningham One, we also held the trial court had not improperly determined the child support award. However, we remanded for reconsideration of whether a downward deviation from the guidelines was warranted in light of a presumption that Dr. Cunningham was exercising the 160 days of visitation awarded to him. *Id.* at *8. In so doing, we instructed the trial court to make written findings on this issue. We further determined that, at trial, Dr. Cunningham had waived the issue of the establishment of an educational trust, and we therefore declined to address the issue on appeal. *Id.* at *9. We also held that the trial court had not abused its discretion in ordering Dr. Cunningham to maintain a life insurance policy to secure his child support obligation, but remanded the issue for reconsideration of the amount based on a potential redetermination of Dr. Cunningham's child support obligation. *Id.*

On remand, the trial court revalued the Mid-South Heart Center at $585,787. It reduced the award to Ms. Cunningham of alimony *in solido* from $450,000 to $400,000, and reduced the rehabilitative alimony award from $6,000 per month for seven years to $5,500 per month for seven years. The trial court made no change in the division of marital property, and ordered Dr. Cunningham to refinance the marital home. The trial court declined Dr. Cunningham's request for a downward deviation from the child support guidelines, and accordingly reaffirmed its order that Dr. Cunningham maintain a life insurance policy of $900,000 for the duration of the child support obligation. Dr. Cunningham again appeals to this Court. We affirm.

### Issues Presented

Dr. Cunningham raises the following issues, as we re-state them, for our review:

(1)    Whether the trial court erred by reducing the award of alimony *in solido* by only $50,000.

(2)    Whether the court erred in the division of marital property.

(3)    Whether the trial court erred in reducing the award of rehabilitative alimony by only $500 per month.

(4)    Whether the trial court erred in refusing a downward deviation from the child support guidelines.

(5)    Whether the trial court erred by ordering Dr. Cunningham to maintain life insurance of $900,000 for the duration of his child support obligation.

(6)    Whether the trial court erred in requiring Dr. Cunningham to refinance the note on the marital residence.

(7)    Whether the trial court erred in failing to award Dr. Cunningham credit for interest on $230,000 deposited with the court against funds due Ms. Cunningham.

Ms. Cunningham requests an award of attorney's fees and costs incurred for this appeal.

### *Standard of Review*

The factual background of this case, statutory requisites, and precedential cases relevant to the issues raised in this appeal are adequately presented in Cunningham One, and need not be reiterated here. To the extent the issues on appeal involve questions of fact, our review of the trial court's ruling is *de novo* with a presumption of correctness. Tenn. R. App. P. 13(d); *Sullivan v. Sullivan*, 107 S.W.3d 507, 509 (Tenn. Ct. App. 2002). We may not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. *Id.* at 510. With respect to the court's legal conclusions, however, our review is *de novo* with no presumption of correctness. *Id.*

### *Division of Property*

Dr. Cunningham contends that the trial court's division of marital property was in error in light of the reduction in value of his medical practice from $1,300,000 to $585,787. The parties agree that taking the revaluation into account, the trial court awarded Dr. Cunningham between sixty-two and sixty-four percent of the marital assets, and awarded Ms. Cunningham between thirty-six and thirty-eight percent of those assets. Dr. Cunningham asserts, however, that the Mid-South Heart Center would have no value without him personally. Additionally, he cites *Stafford v. Stafford*, No. 01A01-9804-CV-00174, 1999 WL 79368 (Tenn. Ct. App. Feb. 19, 1999) (*no perm.*

*app. filed*) and *Batson v. Batson*, 769 S.W.2d 849 (Tenn. Ct. App. 1988) for the proposition that because this was a marriage of short duration, Ms. Cunningham should be placed in the same financial position which she would have been in had the marriage never taken place. Dr. Cunningham's argument must fail, however, in light of this Court's reasoning in *Powell v. Powell*, No. W2002-00421-COA-R3-CV, 2003 WL 1872637 (Tenn. Ct. App. Apr. 7, 2003) *perm. app. denied* (Tenn. Oct. 27, 2003).

As in *Powell*, despite the relatively short duration of this marriage, it is impossible for this Court to determine what the financial status of these parties would have been had their marriage never taken place. In this case, it is clear that Ms. Cunningham has contributed substantially to Dr. Cunningham's financial success. The trial court found Ms. Cunningham had been "the catalyst in establishing the Mid-South Heart Center and getting the administrative side of the business in good working order. She was very instrumental in the success of the Mid-South Heart Center, Inc." The court found Ms. Cunningham "was very successful in providing the business savvy to get the Mid-South Heart Center started. That investment now earns Husband a salary which is almost three times higher than the national median compensation for cardiologists, and has always exceeded the national average." Thus, notwithstanding a marriage of short duration, no windfall results to Ms. Cunningham where she benefits from contributions she has made to Dr. Cunningham's business.

The trial court must make a division of marital property that is equitable, although not necessarily equal, considering the factors listed in section 36-4-121(c) of the Tennessee Code. *Cunningham One*, 2000 WL 33191364, at *4. Duration of the marriage is but one of several factors enumerated by this section. In light of this record and considering all factors prescribed by section 36-4-121(c), and notwithstanding the reduction in the value of Dr. Cunningham's practice, we cannot say the trial court abused its discretion or that the division of marital property is inequitable in this case. We affirm on this issue.

### *The Alimony Award*

Dr. Cunningham contends that in light of the reduction in value of his medical practice by over $700,000, the trial court erred in reducing the award of alimony *in solido* to Ms. Cunningham by only $50,000, and in reducing the rehabilitative alimony award by only $500 per month. The trial court's determination of whether an award of alimony is appropriate is  factually driven, but must be made in light of the factors enumerated in section 36-5-101(d)(1) of the Tennessee Code. *Cunningham One*, 2000 WL 33191364, at *3. The critical factors are the obligee's need and the obligor's ability to pay. *Id.*

In this case, neither Dr. Cunningham's ability to pay nor Ms. Cunningham's need have been altered by the revaluation of Dr. Cunningham's medical practice. In light of the record in this case and the statutory factors prescribed in section  36-5-101(d)(1), we do not believe the trial court abused its discretion in awarding Ms. Cunningham alimony *in solido* of $400,000. Further, in Cunningham One, we affirmed the trial court's conclusion that Ms. Cunningham's rehabilitation is possible, and that rehabilitative alimony is appropriate. *Cunningham One*, 2000 WL 33191364, at

*5. In light of this record and the factors listed in section 36-5-101, we do not believe the trial court abused its discretion is awarding Ms. Cunningham rehabilitative alimony of $5,500 per month for seven years. We accordingly affirm the award of alimony *in solido* and rehabilitative alimony.

### *Child Support*

Dr. Cunningham contends a downward deviation from the child support guidelines is warranted in this case in light of the 160 days of visitation he was awarded with the parties' minor child. The statutory guidelines permit such a downward deviation if the court finds a child's time is more equally divided between the parents than the 80 days anticipated by the guidelines. *Cunningham One*, 2000 WL 33191364, at *6, 8; Tenn. Comp. R. & Regs. 1240-2-4-.02(6)(West, WESTLAW through 2003). Additionally, the trial court may order that sums above the child support amount prescribed by the guidelines for a net income of $10,000 per month be paid into an educational trust. Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(West, WESTLAW through 2003). The court's primary consideration in deviating from the guidelines, where permitted, is the best interests of the child. Tenn. Comp. R. & Regs.1240-2-4-.04(5)(West, WESTLAW through 2003). In Cunningham One, we stated that we must presume Dr. Cunningham was exercising the 160 days of visitation awarded to him until the evidence provided otherwise. We accordingly remanded the issue of whether a downward deviation from the child support guidelines is warranted in this case, instructing the trial court to make written findings of fact on this issue. *Cunningham One*, 2000 WL 33191364, at *8.

Upon remand, the trial court found

Husband is not exercising the ordered visitation and is, therefore, not entitled to downward deviation. Wife produced a calendar diary maintained contemporaneously by her for the years 2000 and 2001, which clearly proves that Husband's overnight time with the minor child closely corresponds to the standard time contemplated by the Child Support Guidelines. This testimony was unrebutted by Husband.

Dr. Cunningham contends Ms. Cunningham's testimony was not unrebutted, and that his parenting time is in excess of 80 days per year. Upon review of the record, however, we cannot say the evidence preponderates against the findings of the trial court. Moreover, insofar as the trial court's determinations rest upon an assessment of credibility, we give great deference to the trial court. *Sullivan v. Sullivan*, 107 S.W.3d 507, 510 (Tenn. Ct. App. 2002). We therefore affirm the determination of the trial court that a downward deviation from the child support guidelines is not warranted in this case. Additionally, whereas Dr. Cunningham's child support obligation has not been modified from the amount originally determined by the trial court in 1999, we affirm the trial court's order requiring Dr. Cunningham to maintain a life insurance policy of $900,000 for the duration of his child support obligation.

*Refinancing of the Marital Home*

Dr. Cunningham contends that the trial court erred in ordering him to refinance the parties' marital home because there had been no substantial and material change of circumstances warranting modification of the final decree of divorce entered on January 20, 1999. However, a showing of material change of circumstances was not required in this case, where the trial court's 1999 judgment was stayed pending appeal, and in October 2000 this Court remanded the issue of the division of marital property. When the trial court entered its order of July 2002, requiring Dr. Cunningham to refinance the marital home, the trial court had jurisdiction to modify the division of marital property pursuant to the remand order of this Court. No material change of circumstances was necessary for this modification. We accordingly affirm the order.

*Credit for Interest on Sums Deposited with the Trial Court*

In its remand order of September 2002, the trial court ordered that Dr. Cunningham be given credit for payment of $230,000 against the funds due Ms. Cunningham under its order of January 20, 1999. These funds were paid into the court pursuant to the trial court's order granting Dr. Cunningham's December 1999 motion to stay the judgment pending appeal. These funds were not released by the court until December 2002, and certainly were not paid in unconditional satisfaction of the judgment. Without citing any authority, Dr. Cunningham asserts the trial court erred by not giving him credit for interest on this amount, for a total credit of $259,000. In light of the fact that Ms. Cunningham was deprived of amounts rightfully hers for a period of nearly four years, we do not believe the trial court erred by refusing to give Dr. Cunningham credit for interest on the $230,000.

*Conclusion*

In light of the foregoing, the judgment of the trial court is affirmed. We decline Ms. Cunningham's request for attorney's fees and costs on appeal. Costs of this appeal are taxed to the Appellant, Louis Ernest Cunningham, and his surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE